**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------- X
JESSICA GOLLOHER,                        :

                     :

            Plaintiff,      :      Civil Case No.

                     :

        v.                :

                     :      **COMPLAINT**

TWENTY-FIRST CENTURY FOX, INC. and    :

FOX NEWS NETWORK LLC,            :

                     :      **Jury Trial Demanded**

           Defendants.      :
--------------------------------------------------------------- X

Plaintiff Jessica Golloher, by her counsel Wigdor LLP, as against Defendants Twenty-First Century Fox, Inc. ("21st Century Fox"), Fox News Network LLC ("Fox News") (21st Century Fox and Fox News, together, "Fox," the "Company" or "Defendants"), hereby alleges as follows:

<u>SUMMARY OF CLAIMS</u>

1. 21st Century Fox and Fox News have attempted to defend the barrage of sexual harassment allegations that have been swirling for months by asserting that none of the victims utilized a "hotline" to voice their complaints. Putting aside the fact that very few employees were even aware that a hotline existed prior to its mention in recent press accounts, Jessica Golloher, Fox News Radio Network's Middle East/North Africa correspondent, did summon the courage, on April 17, 2017, to email 21st Century Fox's purported independent investigator and request an opportunity to speak with her regarding issues at Fox. Within 24 hours of sending this email, and knowing that Ms. Golloher had previously made internal complaints about gender discrimination, Ms. Golloher was, without any prior warning, fired – effective August 2017. The decision to terminate Ms. Golloher can only be described as a blatant act of retaliation.

2. To make matters worse, one of the individuals who made and carried out this retaliatory decision was Defendant Mitch Davis, Vice President of Fox News Radio Network who, according to media reports, was fired from his prior job at ABC News following an "incident of improper use of an on-line account" that involved a sexually explicit photo sent through ABC servers that was turned over to the FBI in connection with possible violations of pornography laws.[1]

3. While Fox may claim that the decision to terminate Ms. Golloher was made before she sent the email on April 17, 2017, any such defense would be preposterous given that Ms. Golloher had previously complained about discriminatory treatment and she was provided no notice or warning whatsoever regarding any potential termination. To the contrary, Ms. Golloher participated in numerous meetings and discussed many assignments that assumed her continued employment at Fox.

4. Moreover, any defense to this action by Fox must be looked at with extreme skepticism given that, ***before this case was even filed***, Fox issued a statement declaring that Ms. Golloher's allegations are "without merit" and that "any suggestion of discrimination or retaliation is baseless."

5. Simply put, any purported desire on the part of Fox to clean up its culture and actually encourage employees to come forward with complaints about discrimination in the workplace is nothing more than a move to salvage its reputation, as illustrated by the immediate and severe retaliation Fox took against Ms. Golloher following her protected activity.

6. As a result, Plaintiff brings this action to seek declaratory, injunctive and equitable relief, and monetary damages, against Defendants for her harm suffered as a direct

---

[1]       See http://www.nytimes.com/1995/08/11/business/the-media-business-abc-executive-dismissed-for-transmission.html.

result of Defendants' discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII").

7.      At all times, Defendants' conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff's rights, warranting an award of punitive damages.  Such conduct has caused, and continues to cause, Plaintiff to suffer substantial monetary damages and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in New York and a substantial part of the events or omissions giving rise to this action, including employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

10.      On June 9, 2017, Plaintiff filed a charge of discrimination and retaliation, arising out of the facts described herein, with the Equal Employment Opportunity Commission ("EEOC") alleging, among other things, violations of Title VII.

11.      The EEOC subsequently issued Plaintiff a Notice of Right to Sue ("Right to Sue"), received on October 20, 2017.

12.      Plaintiff has complied with any and all other prerequisites to filing this action.

## PARTIES

13.      In 2014, Plaintiff Jessica Golloher was hired by Fox News to work at its 1211 Avenue of the Americas, New York, New York location.  On January 1, 2015, Ms. Golloher was assigned to report for Fox News Radio Network ("Fox News Radio") as its Middle East/North

Africa correspondent.  This position also was based out of the New York Office, although Ms. Golloher reported remotely from Jerusalem, Israel.  Ms. Golloher is a United States citizen and prior to her assignment to Jerusalem, she resided in New York County.

14.     Ms. Golloher is employed by Fox News and, at all relevant times, met the definition of an "employee" under all applicable statutes.

15.     Defendant Twenty-First Century Fox, Inc. is a corporation with its principal place of business in New York County, New York, and is duly organized and existing under and by virtue of the laws of the State of Delaware.  At all relevant times, Twenty-First Century Fox, Inc. has met the definition of an "employer" of Plaintiff under all applicable statutes.

16.     Defendant Fox News Network LLC is a limited liability company with its principal place of business in New York County, New York, and is duly organized and existing under and by virtue of the laws of the State of Delaware.  Fox News Network LLC is a wholly owned subsidiary of Twenty-First Century Fox, Inc.  In turn, Fox News Network LLC owns Fox News Channel LLC and Fox Business Channel.  At all relevant times, Fox News Network LLC has met the definition of an "employer" of Plaintiff under all applicable statutes.

**FACTUAL ALLEGATIONS**

I.      **MS. GOLLOHER'S EMPLOYMENT**

    A.      **Background**

17.     In 2008, Ms. Golloher began reporting for Fox as a freelancer.  Already an experienced television and radio reporter, Ms. Golloher, who speaks five European languages, had previously worked as a foreign correspondent for years, including for CBC TV and Radio, France 24, NPR and the BBC.

18.     From 2008 through 2014, Ms. Golloher worked for Fox as a correspondent covering Russia and the former CIS countries.  Based out of Moscow and New York City, Ms. Golloher traveled throughout the world, covering a multitude of topics, including politics, armed conflicts, lifestyles and sports.  By way of example only, Ms. Golloher covered the Sochi Olympics, the war in Eastern Ukraine and the annexation of Crimea.  During this period, on a nearly daily basis, Ms. Golloher reported to Weinbloom and Davis, whose offices are in New York City.

19.     In August 2014, Ms. Golloher agreed to work for Fox as its Middle East/North Africa correspondent, signing a contract that extends until August 2017.

20.     From August 2014 through the end of December 2014, Ms. Golloher worked for Fox as a national correspondent based at its corporate headquarters, 1211 Avenue of the Americas, where she experienced disparate treatment from her supervisors based on her gender.

21.     In January 2015, Fox dispatched Ms. Golloher to work remotely from its Jerusalem bureau to cover the Middle East and Africa.  However, Ms. Golloher was and remains employed by Fox's New York City office.  At all relevant times, Ms. Golloher continued to report to Davis and Weinbloom on a daily basis.

22.     Importantly, there is no one in Jerusalem for Ms. Golloher to "report to," receive assignments or otherwise dictate the parameters of her position.  Rather, her supervisors all are based in New York City, at the Fox corporate headquarters located at 1211 Avenue of the Americas.

23.     The disparate treatment that began while Ms. Golloher was physically located in Fox's New York City office, 1211 Avenue of the Americas, continued through Ms. Golloher's

time when she was still working out of Fox's New York City office but physically reporting from the Middle East.

24.     When Ms. Golloher was dispatched to Jerusalem, she maintained her Fox-issued New York City cell phone number, and in fact, was also given the Fox-issued New York City cell phone number of the prior correspondent who had been dispatched to Jerusalem.

25.     At all times during her employment, Ms. Golloher has been assigned a telephone number and voicemail at Fox's New York City office, 1211 Avenue of the Americas.

26.     At all times during her employment, the address for Ms. Golloher to receive work-related mail has been Fox's New York City office.

27.     At all times during her employment, Ms. Golloher's signature block appended to her Fox News e-mail has reflected her work address as Fox's New York City office, 1211 Avenue of the Americas.

28.     All of Ms. Golloher's work is produced and edited in the New York City office out of which she is based.

29.     All of Ms. Golloher's work is supervised and reviewed in the New York City office out of which she is based.

30.     All of Ms. Golloher's work is sent through servers and accounts in the New York City office out of which she is based.

31.     From August 2014 to the present, Ms. Golloher has been told that her business cards should reflect that she is based out of Fox's New York City office.

**B.     Continuous and Systemic Discrimination Against Ms. Golloher Based on Gender**

32.     Repeatedly throughout her work for Fox, Ms. Golloher was marginalized and subject to discrimination based on her gender.

**Simon Owen**

33.     Simon Owen is a male London-based correspondent for Fox News Radio.  Based on their respective backgrounds, experience and job responsibilities at Fox, Ms. Golloher and Mr. Owen are considered professional peers.

34.     Based in New York but reporting out of Moscow in 2013, Ms. Golloher had been preparing and researching to cover the 2014 Winter Olympics, held in Sochi, Russia.  Such preparation was reasonable under the circumstances as Ms. Golloher had been the primary Russian correspondent for Fox for the past seven years.

35.     In or about November 2013, Mr. Owen contacted Ms. Golloher to inform her that he would be "joining her" in Sochi to cover the Olympics for Fox.

36.     Although Mr. Owen does not speak Russian and was unfamiliar with the country, as evidenced in part by his condescending questions regarding even basic visa and passport issues to Ms. Golloher, Weinbloom and Davis assigned Mr. Owen, not Ms. Golloher, as lead reporter in Sochi.

37.     As part of the deferential treatment that Mr. Owens received, as compared to Ms. Golloher, by Weinbloom and Davis, Mr. Owen was "met" at the airport by handlers to guide him to his hotel.

38.     In stark contrast to Mr. Owen, Ms. Golloher was not met or received at the airport, escorted to her hotel or provided any additional resources during her coverage of the 2014 Olympics.

39.     Instead, shockingly, Ms. Golloher was degraded and humiliated when essentially, Fox forced her to work as Mr. Owen's assistant and was told to simply "piggyback" onto and "defer" to whatever Mr. Owen was doing or needed.

40.     Specifically, Weinbloom and Davis made clear to Ms. Golloher that she was to serve as Mr. Owen's "Russian translator," assist with Mr. Owen's entrée into the country using her established contacts, and provide Mr. Owen with content and ideas for reporting.

41.     Aware of Fox's blatant marginalization of her skills and its decision to promote a man as the voice of Fox during the Olympics, Ms. Golloher complained throughout the Sochi events about her discriminatory treatment and the fact that she was downgraded to "secretarial" status for Mr. Owen's purposes.

42.     Outrageously, Weinbloom responded to Ms. Golloher's protected complaints by stating, "This is how we are doing this," and thereafter ignored any further complaints.

43.     Further, Ms. Golloher was placed on the "B shift" reporting from 5:00 p.m. through 2:00 a.m., while Mr. Owen was assigned the far more desirable day shift. However, Ms. Golloher was expected to, and did, work to assist Mr. Owen during his day shift reporting.

44.     In one humiliating example of sexist treatment, Weinbloom emailed Ms. Golloher and directed her to go out "on the street" after her shift to report in person on the recent ban imposed by Moscow on "lacy underwear imports." Reports stated that the Kremlin was concerned with the health effects of synthetic lace and its lack of breathability and thus had issued regulations that would ban the importation of garments, largely underwear, that were comprised of such lace.

45.     Despite the serious and relevant political news to report on during the Sochi Olympics, Weinbloom and Davis left that content for Mr. Owen and directed Ms. Golloher to spend time on the ridiculous and frivolous "panty protests" in Russia. Weinbloom copied Mr. Owen and other members of the Fox News team in New York on such emails, further adding to Ms. Golloher's humiliation.

46.     Subsequent to Sochi, Mr. Owen was considered to be the lead, while Ms. Golloher's travel was severely curtailed.  She mainly received reporting opportunities when Mr. Owen was on leave or otherwise "couldn't be bothered."

**Dave Anthony**

47.     Dave Anthony is an anchor and producer at Fox News Radio.  At all relevant times, he worked from the 1211 Avenue of the Americas location.  Regularly, Mr. Anthony and Ms. Golloher report live on the same broadcast.  On many occasions, Ms. Golloher complained to Davis and Weinbloom about Mr. Anthony's conduct towards her.  Specifically, Ms. Golloher complained about Mr. Anthony's manner of speaking down to her, including his rude and disparaging conduct and general view that she was a vapid, unintelligent female reporter.  In this regard, Mr. Anthony continuously would dictate word-for-word what he wanted Ms. Golloher to say, not trusting her to put together even basic sentences.

48.     Specifically, in or around early January 2016, Ms. Golloher emailed Davis and Weinbloom, as well as her colleagues Jeff Monosso and Jared Halpern, regarding Mr. Anthony and his relentless edits to her scripts and dictation of exactly what she should say.  Ms. Golloher indicated that his conduct was not professional or something that she was accustomed to experiencing when she wrote, "I mean, this is not normal as far as I am concerned."  Mr. Monosso wrote back and said he was aware of similar complaints, but that Ms. Golloher should just "fly under the radar," a subtle warning that Ms. Golloher would be retaliated against if she chose to push the issue.  Weinbloom and Davis failed to take any meaningful or remedial action in response to Ms. Golloher's complaints about Mr. Anthony, and his discriminatory micromanagement continued, and even became worse.

49.     Indeed, after Ms. Golloher complained about Mr. Anthony's actions, Mr. Anthony continued to bark directives at Ms. Golloher unabated on a regular and continuous basis and suddenly began bombarding Ms. Golloher via internal instant messenger chats about what he expected to see verbatim in her upcoming scripts.  As recently as January 2017, Weinbloom acknowledged Mr. Anthony's continuing conduct in an email to Ms. Golloher.

50.     Ms. Golloher has never heard Mr. Anthony patronize or speak down to similarly-situated male reporters.

51.     Upon information and belief, other female employees at Fox News Radio have complained to management about Mr. Anthony's disparaging treatment of them, including his condescending tone and conduct towards women.

### C.     Sexist Standards Not Applied to Male Correspondents

52.     Throughout her employment at Fox, Ms. Golloher has been the subject of countless sexist comments and has borne witness to boorish comments regarding other female employees.

53.     By way of example only, in or about March 2014, Davis requested that Ms. Golloher send him some recent photos of herself while reporting.  Ms. Golloher sent Davis two photos.  As soon as he received them, Davis called Ms. Golloher to complain that the photos were "horrible," and that she was "much better looking in person," and told her to find better pictures of herself.

54.     Ms. Golloher complained to Weinbloom about being asked for more photos in which she looked more attractive.  No other network that she had worked for, including the CBC and France 24, had ever asked her to submit different photos.

55.     In or around August 2014, Davis announced to the entire newsroom in New York City that he had added a new setting to Ms. Golloher's audio equipment that would lower the pitch of her voice, which apparently was "too high" and grating to Davis's superiors.

56.     Ms. Golloher was mortified at the announcement.  Ms. Golloher's colleagues were likewise aghast that she was so openly shamed for simply being a woman doing her job.

57.     In or around April 2016, while Ms. Golloher was on assignment in Saudi Arabia, Weinbloom directed Ms. Golloher to photograph herself in a burqa and send to him.  As directed, Ms. Golloher took the selfie and sent to Weinbloom.  His response via email, "You are totally ROCKING that Bur[q]a!"

58.     In or around January 2017, while Ms. Golloher was on vacation, there was some breaking news in Jerusalem.  In response, Weinbloom wrote to Ms. Golloher, "You'd better get your butt back there soon!"

59.     Upon information and belief, Weinbloom never wrote such an email to or used such language with a male subordinate.

60.     Despite the reality that Ms. Golloher's job is to pitch important stories about events happening in the conflict-ridden Middle East where reports of bombings, stabbings and other violence occur on a near-daily basis, Davis and Weinbloom regularly deny Ms. Golloher access to report on the ground because it was considered to be "too dangerous."  By way of example only, in early February 2017, Ms. Golloher sent Davis and Weinbloom a pitch proposing travel to Afghanistan for a specific story.  At the time, Ms. Golloher's visa for Afghanistan was valid for just another month.

61.     In response, Weinbloom said Afghanistan was "exceedingly unsafe" and denied her request to travel to report on the story.

62.     Shortly thereafter, Ms. Golloher learned that FOX TV sent a male reporter to cover the exact story in Afghanistan that she had pitched.

63.     Similarly, despite the fact that Ms. Golloher is the correspondent for the Middle East and is based out of Jerusalem, Weinbloom and Davis recently sent Mr. Owen all the way from London to Pakistan to cover a story that Ms. Golloher was ready and willing to report on. Additionally, the cost to travel from Jerusalem to Pakistan would have been substantially lower than the cost of travel for Mr. Owen.

64.     On another occasion, when Ms. Golloher suggested that she report from Moscow regarding issues Russia and Turkey were experiencing, Weinbloom and Davis shockingly rejected the idea, claiming it was too much of a "security and liability" issue to have her reporting from there.  Notably, during her six years of living and reporting in Russia for Fox, such concern for her security was nonexistent.

65.     Ms. Golloher complained about the disparate treatment she received as compared to her male peers.  Specifically, she complained to Davis and Weinbloom about their repeated denials of her requests to travel and report on stories, using such pretexts as dangerous conditions or expense of traveling for the story, yet male reporters were sent to the precise locations she had pitched, often at a much greater economic cost to Fox News.  Weinbloom and Davis did nothing in response.

66.     Ms. Golloher did not consider complaining to Human Resources ("HR") a viable option.  Over the years, Ms. Golloher had heard that HR was not to be trusted as it had repeatedly failed to assist employees with valid concerns.  In particular, Ms. Golloher knew about a female senior editor in Fox News Radio who had dared to complain about a male anchor to HR in or about 2014.  Although the male anchor's contract was eventually not renewed, Ms.

Golloher knew that the female employee was subjected to relentless retaliation following her complaints, including direct retaliation by Davis and Weinbloom.

67.     Indeed, Weinbloom and Davis did nothing to hide their fury that the female editor went to HR in the first place, much less revealed that rampant sexism was taking place in the Fox News Radio department.

68.     Reasonably, Ms. Golloher believed that if she went to HR to report her unequal treatment by Weinbloom and Davis, or unfair treatment by Mr. Anthony, she would suffer even more discrimination and, likely, retaliation.

69.     This all changed in early April 2017, however, when Ms. Golloher was intentionally misled by Fox News into believing that it truly cared about its employees and was committed to providing a trustworthy, safe avenue for reporting discrimination.

70.     Distressingly, Ms. Golloher's belief could not have been more wrong.

**D.     Ms. Golloher Attempts To Report Discrimination and is Fired In Less Than 24 Hours**

71.     On or around April 1, 2017, the NYT printed an exposé detailing the numerous occasions on which female employees had complained about sexual harassment and gender discrimination on the part of Bill O'Reilly ("O'Reilly"), who was, at the time, a star anchor for Fox.[2]

72.     The shocking article detailed how Fox systemically protected O'Reilly, shielding him from numerous complaints of sexual harassment and gender discrimination.

73.     Woman after woman brought allegations of sexual harassment to Fox.

74.     And time and again, Fox paid out settlements to these women, rather than risk losing O'Reilly.

---

[2]     See https://www.nytimes.com/2017/04/01/business/media/bill-oreilly-sexual-harassment-fox-news.html.

75.     The NYT reported that approximately $13 million had been paid out to women who had complained about O'Reilly's harassment.

76.     Once the article surfaced about these abhorrent practices, the ensuing media frenzy surrounding Fox demanded a response.

77.     In an immediate attempt to deflect backlash from the NYT article, on April 4, 2017, Fox issued a company-wide email about its alleged commitment to fostering a fair and nondiscriminatory workplace.  Specifically, Kevin Lord, the new Executive Vice President of HR, sent an email with the following text:

> Hi Everyone,
>
> As many of you know from participating in our newly expanded HR training, I am the new Executive Vice President of Human Resources at Fox News. **Particularly in light of some of the accounts published over the last few days**, I wanted to re-emphasize the message we have been conveying at our training sessions for several months. **If any employee has any concerns about behavior in our workplace**, I urge you to raise those concerns with me, or with our General Counsel Dianne Brandi, or with 21CF's Chief Compliance Officer Gerson Zweifach, or **directly with Michele Hirshman of the Paul Weiss law firm**, who has been working with 21CF since this summer. **We want to give you every opportunity to be heard through a vehicle of your choice, so that we can attempt to address your concerns promptly and confidentially**. Our contact info is below.
>
> Thanks,
> Kevin

(emphasis added).

78.      The email was a public relations attempt to fight back against the media frenzy and to pretend to care about discriminatory conduct being committed against female employees.

79.     At the same time, O'Reilly and representatives for Fox responded publicly to the NYT article by stating that no employee had made complaints about O'Reilly on the company "hotline:"

> "Notwithstanding the fact that no current or former Fox News employee ever took advantage of the 21st Century Fox hotline to raise a concern about Bill O'Reilly, even anonymously," the Company said, noting that it had looked into the accusations and that O'Reilly had denied them on their merits and "resolved" them.
>
> O'Reilly said the lawsuits are the inevitable result of his fame and controversial persona, adding: "In my more than 20 years at Fox News Channel, no one has ever filed a complaint about me with the Human Resources Department, even on the anonymous hotline."[3]

80.     News of the alleged existence of the hotline took current and former Fox employees by surprise.  As reported, many employees said they were not aware of an anonymous hotline.  Notably, Fox's feigned reliance on a "hotline option" for employees came more than a decade after the first reported sexual harassment lawsuit against O'Reilly and eight months after the July 2016 public explosion regarding sexual harassment complaints against former Chief Executive Officer Roger Ailes.

81.     Ms. Golloher soon learned that Fox, rather than treating complaints of discrimination as worth prompt and confidential consideration, instead used them to paint targets on the backs of employees.

82.     On or about April 17, 2017, Ms. Golloher emailed Michele Hirshman, the lawyer at Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") who was identified in Mr. Lord's April 4, 2017 email.

---

[3]     See http://www.huffingtonpost.com/entry/fox-news-sexist-culture_us_58e2976ee4b0d0b7e1639421.

83.     In that email to Paul Weiss attorneys, Ms. Golloher stated, "**I'm having some issues at FOX**. Is it feasible to give you a call this week? I'd really appreciate it." (emphasis added).

84.     From her email and her prior internal complaints to Davis and Weinbloom, it was clear that Ms. Golloher was intending on reporting the discriminatory behavior in the workplace to which she had been subjected to the Paul Weiss lawyers, and her attempt at reaching out was in direct response to Mr. Lord's April 4, 2017 email.

85.     Just a few hours later, Ms. Hirshman responded, asking for Ms. Golloher's availability.

86.     Indeed, as described above, Fox has been on notice of Davis's inappropriate behavior for more than 20 years.  Prior to his affiliation with Fox, Davis was an editorial producer of on-line services at ABC News.  According to media reports, in August 1995, after 23 years at ABC News, Davis was terminated following an "incident of improper use of an on-line account."  According to an August 11, 1995 article published by the NYT, the spokesperson for ABC News declined to comment on the nature of the photograph.  In this same article, an executive at ABC News, who spoke to the press on the condition of anonymity, said that the photograph was sexually explicit and that it had been turned over to the FBI in connection with possible violations of pornography laws.[4]

87.     In spite of Davis's checkered past, Fox welcomed Davis to the Company in 1997. First hired as a Special Events Coordinator, Fox proceeded to promote Davis repeatedly until, in 2003, Davis was promoted to Managing Editor of Fox News Radio.  In 2005, Fox News promoted Davis again, to Director of News Programming for Fox News Radio.  In 2007, he was

---

[4]     See        http://www.nytimes.com/1995/08/11/business/the-media-business-abc-executive-dismissed-for-transmission.html.

promoted to Vice President of Fox News Radio.  In 2015, Davis was placed in a senior position at Fox News Radio, reporting to former co-President of Fox News, Bill Shine.

88.     Less than 24 hours after Ms. Golloher sent the email to Ms. Hirshman to report the discrimination she was facing from Weinbloom and Davis, she received an email from Weinbloom asking her to "call Mitch."

89.     When Ms. Golloher called Davis, he shockingly advised her that she would be terminated, effective August 2017.

90.     Ms. Golloher was provided no advance notice of any purported performance deficiency or warning that she might be terminated.

91.     The termination reason, as stated by Davis, was "budgetary concerns."

92.     Davis further stated to Ms. Golloher that she was selected because her salary was costing the Company the "most" money.  Davis did not ask Ms. Golloher to consider a reduction in compensation to cut costs, which he could have done if the purported rationale for Ms. Golloher's termination was genuine.

93.     Since she has been informed of her termination, Ms. Golloher continues to be excluded from work assignments.

94.     Moreover, freelance colleagues are being given assignments that are entirely within Ms. Golloher's area of expertise despite the fact that she is still on Fox's payroll.

95.     The reasons for Ms. Golloher's termination are entirely pretextual, as it is apparent that Fox will replace Ms. Golloher.  Indeed, while recently on vacation, Fox paid two separate individuals to cover for her despite their purported claim that she is not going to be replaced and that they have no money in the budget to keep Ms. Golloher.

96.     Defendants' decision to terminate Ms. Golloher is a transparent act of retaliation and a clear attempt to silence yet another victim of discrimination at Fox.

97.     It is clear that Fox remains more concerned about protecting its male employees and shielding them from the consequences of their discriminatory behavior than it is in ensuring that it is complying with the law and ensuring that women can work in a space free from discrimination.

**E.     Ms. Golloher Experiences Retaliation Following the Filing of this Lawsuit**

98.     Ms. Golloher has been retaliated against severely for filing this lawsuit.  Indeed, since this lawsuit was filed, Ms. Golloher has been removed from and/or not asked to perform many of the assignments she performed before filing this lawsuit.

99.     The day after this lawsuit was filed, Fox's Jerusalem bureau chief, Eli Fastman, called Ms. Golloher and demanded to know why she had not given him a heads up about the lawsuit.  He also asked Ms. Golloher whether she intended on seeing out the remainder of her contract with Fox.

100.    Three days later, the second in command at Fox's Jerusalem bureau, Mark Abrahams, confronted Ms. Golloher and demanded to know whether she was suing Fox's Jerusalem bureau.

101.    The same day, David Lee Miller, a New York City-based correspondent who was filling in at the time for Ms. Golloher's colleague, screamed at Ms. Golloher, "so do I just call you Plaintiff now?"

102.    In the following weeks and months, Ms. Golloher was given significantly less live reporting responsibility, whereas prior to this lawsuit Ms. Golloher was live many times per day, on average.

103.     In addition, Fox began assigning reporters to cover breaking stories that would generally have been Ms. Golloher's to cover, including assigning U.S.-based reporters to stories regarding events occurring in the Middle East.

104.     Ms. Golloher was even taken off important stories to which she had been assigned prior to the filing of the Complaint.

105.     Moreover, despite the claim that Ms. Golloher was terminated due to budget cuts, Fox continues to spend substantial amounts of money supporting the careers and development of its male employees who have not lodged complaints of discrimination.  Fox also has continued to hire new employees who perform roles substantially similar to that performed by Ms. Golloher. Clearly, there are no budget cuts at Fox and the excuse for Ms. Golloher's termination is pure pretext for retaliation.

**F.     Fox Hired Attorneys Known For Their Retaliatory Litigation Tactics**

106.     The decision to retaliate against Ms. Golloher is consistent with Fox's history of retaliating against employees who attempt to assert claims against the Company.

107.     On March 28, 2017, Fox News employees Tichaona Brown and Tabrese Wright filed a race discrimination lawsuit against the Company and their supervisor, former Fox News Controller Judy Slater.  After the action was filed, Ms. Brown was promptly terminated and Ms. Wright was demoted.  See Brown, *et al.* v. Twenty-First Century Fox, Inc., *et al.*, Index No. 22446/2017E (N.Y. Sup. Ct. 2017).

108.     Moreover, Fox has hired Epstein, Becker & Green, P.C. ("EBG") to defend the Brown lawsuit.

109.     EBG has a proud history of engaging in retaliatory litigation against employees who exercise their rights under the anti-discriminations laws.  Ronald M. Green, a named Partner

at EBG who is working on the <u>Brown</u> matter, unabashedly holds himself out as "one of the pioneers of the use of preemptive litigation in suing current and former employees, and others, who threaten to bring legal proceedings. . . ." against the Firm's clients.   <u>See</u> http://www.ebglaw.com/ronald-m-green/.   Mr. Green has authored articles regarding his self-renowned retaliatory tactics, including articles entitled "'PREEMPTIVE' Employment Litigation:  When An Employer's Best Defense May Be A Good Offense" and "The Employer's 'Sue-First' Strategy in high-stakes litigations, 'preemptive strike' has produced results."

110.    In <u>Fox News Network, LLC, *et al.* v. Mackris, *et al.*</u>, Index No. 014087/2004 (N.Y. Sup. Ct. 2004), Mr. Green and EBG represented Fox News and O'Reilly in retaliatory, preemptive litigation against Andrea Mackris, as well as against her attorneys, Benedict P. Morelli & Associates, after Ms. Mackris indicated an intention to commence a sexual harassment lawsuit.  Mr. Green and EBG "justified" the retaliatory litigation by alleging that Ms. Mackris's claims were an "extortion scheme."   Fox News and O'Reilly settled the claims for around $9,000,000.    <u>See</u>   https://www.nytimes.com/2017/04/01/business/media/bill-oreilly-sexual-harassment-fox-news.html?_r=0.

111.    Mr. Green and EBG also represented Madison Square Garden ("MSG") in the highly publicized employment discrimination action brought by Anucha Browne Sanders, that resulted in an approximately $12 million jury verdict in her favor.  In that matter, Mr. Green and EBG attempted to assert a retaliatory counterclaim against Ms. Sanders for a purported breach of her fiduciary duty to MSG.  The court denied the request to assert the counterclaim, concluding that the counterclaim would be "futil[e]."   <u>See</u> <u>Sanders v. Madison Square Garden, et al.</u>, No. 06 Civ. 589 (GEL), 2007 WL 1933933 (S.D.N.Y. July 2, 2007).

112.    In <u>Bivona & Cohen, P.C. et al. v. Richards, et al.</u>, Index No. 105583/2008 (N.Y. Sup. Ct. 2008), Mr. Green and EBG represented Bivona & Cohen, P.C. and Josepth V. Figliolo in retaliatory, preemptive litigation against their former employee, Wendy Richards, who had accused her employer and supervisor of sexual harassment.   After Ms. Richards filed her discrimination claims in federal court, Mr. Green withdrew as counsel.

113.    Most recently, in <u>Marchuk v. Faruqi & Faruqi, et al.</u>, No. 13 Civ. 1669 (S.D.N.Y. 2013), Mr. Green and another Partner at EBG working on the <u>Brown</u> matter, Barry Asen, filed a $15 million retaliatory counterclaim against the plaintiff, Alexandra Marchuk, on behalf of the defendants.  Ms. Marchuk had alleged that the defendants committed and/or permitted egregious sexual harassment.   Ultimately, EBG was forced to voluntarily withdraw the retaliatory counterclaim because it was clear that there was absolutely no basis for it.  Shortly thereafter, EBG withdrew as counsel.

114.    Finally, in the matter of <u>Abrams v. Pecile, *et al.*</u>, Index No. 110329/2009 (N.Y. Sup. Ct. 2009), Mr. Green and Mr. Asen brought retaliatory litigation on behalf of EBG's client against the plaintiffs, as well as against Wigdor LLP (Ms. Golloher's attorneys herein).   The counterclaims were dismissed at the pleading stage.   The decision dismissing the counterclaims was affirmed on appeal.   Eventually, EBG withdrew as counsel.

115.    Simply put, any purported desire on the part of Fox to clean up its culture and actually encourage employees to come forward with complaints about discrimination in the workplace is nothing more than a move to salvage its reputation, as illustrated by the immediate and severe retaliation Fox took against Ms. Golloher following her protected activity.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII)

116.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

117.    By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender in violation of Title VII by, *inter alia*, denying Plaintiff the same terms and conditions of employment available to similarly-situated male employees, including, but not limited to, subjecting Plaintiff to disparate treatment, including disparate pay, disparate assignments and sexist comments, and terminating Plaintiff's employment.

118.    Defendants have discriminated against Plaintiff on the basis of her gender in violation of Title VII by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a discriminatory environment that has included, among other things, pervasive discrimination committed against Plaintiff based on her gender.

119.    As a direct and proximate result of Defendants' unlawful conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, but not limited to, monetary and/or economic harm, for which she is entitled to an award of monetary damages.

120.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages.

121.    Defendants' unlawful and discriminatory actions constitute malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

122.    Plaintiff is also entitled to an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

123.    Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

124.    By the actions described above, among others, Defendants have retaliated against Plaintiff in violation of Title VII by, *inter alia*, threatening and intimidating Plaintiff, changing Plaintiff's job responsibilities and duties, and terminating Plaintiff in retaliation for her protected activity.

125.    As a direct and proximate result of Defendants' unlawful conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages.

126.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of compensatory damages.

127.    Defendants' unlawful and retaliatory actions constitute malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights under Title VII, for which Plaintiff is entitled to an award of punitive damages.

128.    Plaintiff is also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A.    An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives and any and all persons

acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

B.      An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment and otherwise unlawful conduct (including reinstatement), and to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff;

C.      A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State and City of New York;

D.      An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E.      An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, emotional pain and suffering and any other physical and mental injuries;

F.      An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

G.      An award of punitive damages;

H.      An award of costs that Plaintiff has incurred in this action, as well as reasonable attorneys' fees to the fullest extent permitted by law; and

I.      Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: October 25, 2017
  New York, New York

      Respectfully submitted,

      **WIGDOR LLP**

      By: _____
        Douglas H. Wigdor
        Jeanne M. Christensen
        Michael J. Willemin
        Elizabeth J. Chen

      85 Fifth Avenue
      New York, NY  10003
      Telephone:  (212) 257-6800
      Facsimile:   (212) 257-6845
      dwigdor@wigdorlaw.com
      jchristensen@wigdorlaw.com
      mwillemin@wigdorlaw.com
      echen@wigdorlaw.com

      *Counsel for Plaintiff*